**TORWEST DBC, INC., a Colorado Corporation, Plaintiff-Appellant,**

v.

**John W. DICK, Werner C. Heinrichs, William B. Pauls, Canusa Investments (CI) Ltd., a Jersey, Channel Islands Corporation, and Barclays Bank of Canada, a Canadian Corporation, Defendants-Appellees.**

**No. 86–1450.**

United States Court of Appeals, Tenth Circuit.

Jan. 20, 1987.

---

G. Robert Blakey, of counsel, Notre Dame Law School, Notre Dame, Indiana (F. Kelly Smith and Gary T. Cornwell of McGuire, Cornwell & Blakey, Denver, Colo., on the brief), for plaintiff-appellant.

David A. Zisser (Terence P. Boyle with him on the brief), of O'Connor & Hannan, Denver, Colo., for defendant-appellee Dick.

Bruce D. Pringle (James A. Clark, with him on the brief) of Baker & Hostetler, Denver, Colo., for defendants-appellees Heinrichs and Canusa Investments.

Charles F. Brega of Roath & Brega, P.C., Denver, Colo., filed a brief, for defendant-appellee Pauls.

Before SEYMOUR, SETH, and ANDERSON, Circuit Judges.

SEYMOUR, Circuit Judge.

Torwest DBC, Inc. brought this action against John Dick, Werner Heinrichs, William Pauls, Canusa Investments Ltd., and Barclays Bank of Canada, asserting claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982) (RICO). Defendants moved to dismiss,[1] asserting that Torwest DBC had failed to allege adequately the elements of a RICO claim. With the agreement of the parties, the district court treated defendants' motions to dismiss as motions for summary judgment under Fed.R.Civ.P. 56 and accepted the statement of the facts contained in Torwest DBC's brief as true for purposes of the ruling. The court then granted the motions and dismissed the action. *See Torwest DBC, Inc. v. Dick,* 628 F.Supp. 163 (D.Colo.1986). We affirm.

## I.

The allegations of the complaint and the accepted statement of facts establish that in February 1974, defendants Dick, Heinrichs, and Pauls, through a corporation named Vace Securities, entered into an agreement with Great-West Life Assurance Company to form Torwest Properties, a corporation created to acquire and develop real property. Vace and Great-West shared the Torwest stock equally, and each could place three members on the Torwest board of directors. Vace named Dick, Heinrichs, and Pauls to the board, and Heinrichs became president. Vace was to find new properties for acquisition by Torwest, and to pursue development of the acquired properties. Great-West was to capitalize Torwest's investments.

---

1. Torwest DBC also alleged pendent claims for relief based on Colorado law, which the district judge dismissed for lack of jurisdiction upon disposition of the RICO claims.

In October 1977, Dick, Heinrichs, and Pauls formed Canusa Investments Ltd. through nominees, for the purpose of acquiring on behalf of the individual defendants a secret interest in the Denver Business Center (DBC) and then selling DBC to Torwest at a profit. Canusa purchased DBC for a total price of $5,400,000, and thereafter gave Dick an exclusive option to purchase the DBC property for $12,650,-000. This figure included a $6,000,000 participation interest held by Canusa, which was to be satisfied by payment of fifty percent of the proceeds from the development of individual DBC parcels.

Dick and Heinrichs proposed to the Torwest board that Torwest purchase DBC, representing to the board that Canusa was owned by Barclays Canada. The board voted in favor of this recommendation, and formed a new corporation, Torwest DBC, to acquire and develop DBC. All three individual defendants were directors of Torwest DBC, which approved the acquisition of DBC. Under the purchase agreement, Torwest DBC made a cash down payment of $1,250,000, assumed mortgages and deeds of trust, and executed a promissory note, secured by a mortgage, to cover the $6,000,000 Canusa was to derive from its participation interest. As a result of these transactions, Dick, Heinrichs, and Pauls received an immediate secret profit through Canusa of $1,250,000, and a potential additional profit of $6,000,000 as individual DBC parcels were developed and sold. Canusa subsequently assigned its interest in the $6,000,000 participation note to Adviso Holding B.V., a nominee-chartered corporation that represented the interests of Dick, Heinrichs, and Pauls.

By the end of 1980, Torwest became dissatisfied with the efforts of Dick, Heinrichs, and Pauls to develop DBC, and removed them from the boards of Torwest and Torwest DBC. Following their departure, Adviso began to challenge the computation of the participation interest profits and ultimately sued Torwest DBC. That suit brought about discovery of the role Dick, Heinrichs, and Pauls had played through Canusa and Adviso in the DBC transaction, and precipitated the instant litigation.

Based on these allegations, Torwest DBC asserted that Dick, Heinrichs, and Pauls had conspired to conduct and had conducted the affairs of an enterprise through a pattern of racketeering activity within the meaning of RICO. The district court concluded that Torwest DBC's allegations and statement of facts did not show the pattern of racketeering activity required for the substantive count, and that the alleged conspiracy to commit the substantive violation must therefore be dismissed as well. The focus of our inquiry on appeal is the often litigated and troublesome issue of whether the factual allegations are sufficient to set out a pattern of racketeering activity within the ambit of RICO.

## II.

Section 1962(c), the substantive RICO violation at issue here, states that

> "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

18 U.S.C. § 1962(c).[2] A violation of section 1962(c) thus "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). RICO defines

---

**2.** The RICO conspiracy provision states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). As the district court pointed out, the only RICO conspiracy alleged was the one to commit the substantive violation of section 1962(c) involv-

ing the sale of DBC. *See Torwest DBC, Inc.*, 628 F.Supp. at 167. Accordingly, our resolution of the § 1962(c) claim is dispositive of the conspiracy claim as well. *See United States v. Hampton*, 786 F.2d 977, 978 (10th Cir.1986) ("The object of a RICO conspiracy must be to violate a substantive RICO provision.").

racketeering activity as, inter alia, any act that is indictable under 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud). *See* 18 U.S.C. § 1961(1)(B). RICO also states that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).

The Supreme Court has pointedly observed that "[t]he 'extraordinary' uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail, and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of 'pattern.' " *Sedima*, 105 S.Ct. at 3287. The Court noted in *Sedima* that the RICO definition of pattern implies that "while two acts are necessary, they may not be sufficient," *id.* at 3285 n. 14, and pointed to the Act's legislative history indicating the type of activity Congress intended RICO to encompass.

"As the Senate Report explained: 'The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.' S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that '[t]he term "pattern" itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern....' 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.*, at 35193 (statement of Rep. Poff) (RICO 'not aimed at the isolated offender'); House Hearings, at 665. Significantly, in defining 'pattern' in a later provision of the same bill, Congress was more enlightening: 'criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, partici-

pants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States*, 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975)."

*Id. Sedima* thus makes clear that a RICO violation requires continuous and related racketeering acts.

In subsequent cases, courts have struggled to implement *Sedima* 's directive to develop a meaningful concept of pattern based on continuity plus relationship. Development of a uniform concept has been hampered by *Sedima* 's instruction to read limitations into the statutory definition even though the Act is to be broadly construed, *see id.* at 3286, by the myriad of diverse fact patterns underlying civil RICO suits, and by the abstract nature of the Court's references to continuity and relationship.

■ In this case, the court and the parties assumed for purposes of the court's ruling that defendants engaged in numerous racketeering acts. It is clear that when, as here, the acts are part of a common fraudulent scheme, they satisfy the relationship requirement of *Sedima*. *See, e.g., Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986). However, to establish a RICO pattern, a plaintiff must also demonstrate continuity, that is, "the threat of continuing activity." *Sedima*, 105 S.Ct. at 3285 n. 14. This element is derived from RICO's legislative history, which indicates that RICO does not apply to "sporadic activity" or to the "isolated offender". *Id.*

■ The continuity requirement has been the source of considerable difficulty. Courts generally agree that to make an adequate showing of continuity under *Sedima*, a plaintiff must demonstrate some facts from which at least a threat of ongoing illegal conduct may be inferred.[3] A

---

3. A notable exception to the continuity require-   ment is the case of *R.A.G.S. Couture, Inc. v.*

scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished. Courts that have considered a RICO claim grounded on this type of scheme have therefore required some additional evidence showing that the scheme was not an isolated occurrence. *See, e.g., Lipin Enters. Inc. v. Lee,* 803 F.2d 322, 324 (7th Cir.1986) (acts to defraud one victim one time insufficient in absence of showing of other victims or other frauds). A more difficult question is presented when the RICO claim is based on one scheme involving one victim, but the plan contemplates open-ended fraudulent activity and does not have a single goal that, when achieved, will bring the activity to an end. Some courts have found that such an ongoing scheme is itself sufficient to satisfy the continuity element of a RICO pattern. *See, e.g., Morgan v. Bank of Waukegan,* 804 F.2d 970, 976 (7th Cir.1986); *see also Illinois Dept. of Revenue v. Phillips,* 771 F.2d 312 (7th Cir.1985). Other courts may require additional proof showing that the defendants have engaged in similar activity in the past, or have been involved in other criminal activity, or pose a threat of similar activity in the future. *See, e.g., Superior Oil Co.,* 785 F.2d at 257.

▪ We do not agree with Torwest DBC's contention that the instant case involved a scheme that contemplated open-ended fraudulent activity over a period of time. The undisputed facts here reveal that the single scheme at issue involved one victim, Torwest DBC, and had a single goal, the recovery of secret profits through self-dealing in the sale of the DBC. Torwest DBC argues that the scheme itself involved continuous behavior because the development of individual DBC parcels occurred over an extended period of time and under the agreement defendants profited from each sale of a parcel. We do not find

these facts significant. The fraud was perpetrated at the time Torwest DBC purchased DBC. The subsequent sales of the parcels, which were not in themselves fraudulent, were simply the means by which the fruits of the fraud were realized. Nothing in the allegations or the agreed statement of facts indicates that the scheme here was formulated to accomplish more than one discrete goal or to continue after that goal was achieved. Therefore, no threat of continuing fraudulent activity can be inferred from the nature of the scheme itself.

Torwest DBC also contends that an inference of ongoing activity may be drawn because the positions of trust held by Dick, Heinrichs, and Pauls would allow them to fraudulently develop other projects. However, Torwest DBC did not allege either in the complaint or in the agreed statement of facts anything to suggest that these defendants actually undertook or planned to undertake any other fraudulent activity. Any threat of continuing activity made possible through misuse of their fiduciary position was eliminated when Dick, Heinrichs, and Pauls were removed from the boards of Torwest and Torwest DBC.

In sum, we find no indication, either in the nature of the fraud itself or in any of the other circumstances suggested by Torwest DBC, that the activity here was other than an isolated incident, to which RICO does not apply. In reaching this conclusion, we decline to go beyond the facts before us to formulate a bright-line test in the abstract. Although our approach may not provide precise guidance on this troublesome issue, we believe it is required by our mandate to construe RICO broadly while at the same time complying with the *Sedima* concept of the elements of a pattern. *See Morgan,* 804 F.2d at 977.

The judgment is AFFIRMED.

---

*Hyatt,* 774 F.2d 1350 (5th Cir.1985), in which the court did not address the issue of continuity and held that a pattern could be established solely on the basis of related illegal acts. *R.A.G.S.* has been criticized for its failure to heed the Supreme Court's discussion in *Sedima, see, e.g., Papagiannis v. Pontikis,* 108 F.R.D. 177, 179 n. 3 (N.D.Ill.1985), and we do not find it persuasive.