Robert E. and Margie C. SULLIVAN,
et al., Plaintiffs,

v.

BOETTCHER & COMPANY, et
al., Defendants.

No. 88–C–1932.

United States District Court,
D. Colorado.

June 13, 1989.

Alan C. Freidberg and Edward A. Cerkovnik, Jr., Pendleton & Sabian, P.C., Denver, Colo., for plaintiffs.

James E. Nesland and William J. Leone, Ireland, Stapleton, Pryor & Pasco, P.C., Denver, Colo., for defendants Boettcher.

David W. Stark and J. Thomas Macdonald, Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Denver, Colo., for defendant Colorado Nat. Bank.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Forty three plaintiffs have sued the defendants Boettcher & Company, n/k/a Boettcher Properties, LTD., Boettcher & Company, Inc., Boettcher Investment Corporation (collectively "the Boettcher defendants"), John Does 1–10 and Colorado National Bank of Denver ("CNB") asserting claims that arise from their purchase of industrial revenue bonds issued by the City of Arvada, Colorado in 1983. Northwest Professional Group ("NPG"), who issued the bonds to finance construction of a medical office, has defaulted. Plaintiffs contend that the defendants are liable for their resulting monetary losses.

In an amended and restated complaint, the plaintiffs have asserted federal claims for violation of §§ 10(b) and 15(c)(1) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78o, and Rules 10b–5 and 15c1–2, promulgated thereunder, 17 C.F.R. §§ 240.10b–5 and 240.15c1–2, (First Claim); violation of § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2), (Second Claim); and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. (Third Claim); and state claims for violation of the Colorado Organized Crime Control Act ("COCCA"), Colo.Rev.Stat. §§ 18–17–101 et seq., (Fourth Claim); violation of the Colorado Securities Act of 1981, Colo.Rev.Stat. §§ 11–51–101 et seq., (Fifth Claim); breach of fiduciary duty (Sixth Claim); negligence (Seventh Claim); fraud (Eighth Claim); and negligent misrepresentation (Ninth Claim). Besides suing the defendant CNB as an aider and abettor based on federal and state securities law violations (Tenth and Eleventh Claims), the plaintiffs also assert state law claims against that defendant for breach of fiduciary duty (Twelfth Claim), negligence (Thirteenth Claim), and fraud (Fourteenth Claim). Plaintiffs have sued all defendants for § 10(b) and Rule 10b–5 violations based on a fraud on the market theory (Fifteenth Claim).

The Boettcher defendants have filed a motion to dismiss the plaintiffs' Third through Ninth Claims, asserting a variety of legal arguments. Plaintiffs have responded by opposing the motion.

The parties have fully briefed the issues and oral argument would not materially assist my decision. Jurisdiction exists under 15 U.S.C. §§ 78aa and 77v, 18 U.S.C. § 1964(c), 28 U.S.C. § 1331, and pendent jurisdiction.

■ The Boettcher defendants first contend that the plaintiffs' pendent state claims should be dismissed. Whether to exercise pendent jurisdiction over state claims is a matter within the court's discretion. Factors to be considered in deciding

the issue include (1) judicial economy, (2) availability of a surer-footed reading of state law in state court, (3) predominance of state issues compared with federal issues, (4) broader scope of remedies available under state versus federal law, and (5) the potential for jury confusion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966). The exercise of pendent jurisdiction in federal securities cases often is inappropriate. Relying on the reasons advanced in *Kerby v. Commodity Resource, Inc.,* 395 F.Supp. 786 (D.Colo.1975) and *In re Storage Technology Sec. Litig.,* 630 F.Supp. 1072, 1080–81 (D.Colo.1986), I decline to exercise my discretionary power to take pendent jurisdiction over the plaintiffs' state law claims.

The Boettcher defendants' motion to dismiss is granted as to the plaintiffs' Fourth through Ninth Claims. I note that the plaintiffs also have asserted pendent state claims against the defendant CNB in the Eleventh through Fourteenth Claims. I *sua sponte* decline to exercise pendent jurisdiction over these state claims as well. Plaintiffs' Fourth through Ninth, and Eleventh through Fourteenth Claims are dismissed without prejudice to the plaintiffs' rights to reassert those claims in state court.

Next, the Boettcher defendants assert that the plaintiffs' RICO claim (Third Claim) should be dismissed because the amended and restated complaint does not sufficiently allege (i) a pattern of racketeering activity, (ii) an enterprise separate from the defendants, or (iii) fraud with the particularity required by Rule 9(b), Fed.R. Civ.P. Defendants' argument also addresses the plaintiffs' COCCA claim (Fourth Claim), but since I have dismissed that pendent state claim, the argument on that issue is denied as moot.

■ When reviewing the sufficiency of a complaint when tested by a motion to dismiss, the court must accept as true the complaint's allegations and view them in a light most favorable to the plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must stand unless it appears beyond doubt that the plaintiffs have alleged no facts that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

■ In order to state a claim for relief under RICO, the plaintiffs must allege that a pattern of racketeering activity existed. *Sedima v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). A plaintiff must allege at least two acts of racketeering activity in order to establish a "pattern." 18 U.S.C. § 1961(5).

In *Sedima,* the Supreme Court noted: "While two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern.' The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern." 473 U.S. at 496 n. 14.

The Court partially relied on a Senate Report that stated:

"The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." *Id.* at 496. S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

In *Torwest DBC, Inc. v. Dick,* 810 F.2d 925 (10th Cir.1987), the Tenth Circuit Court of Appeals held that a scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, "even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is achieved." *Id.* at 928–29.

■ In their amended complaint, the plaintiffs contend that the Boettcher defendants underwrote, offered and sold the industrial bonds from July 28, 1983 until August 18, 1987. Amended complaint at paras. 8, 11–12. Plaintiffs are listed individually along with the amounts and dates of their respective purchases. Amended complaint, para. 13.

Quoting liberally from the amended complaint, the portions relevant to the RICO claim read as follows:

"15. The Bonds were offered and sold to plaintiffs by the use of the United States mails, the telephone and other means of interstate commerce."

\* \* \* \* \* \*

"42. Boettcher's repeated and continuing violations of federal and state securities laws and commission of acts constituting common law fraud in connection with the sale of the Bonds, as set forth above [paras. 1–40], are predicate acts demonstrating a pattern of racketeering activity as defined in 18 U.S.C. § 1961(1)(D), and are the acts for which damages are sought in this claim."

"43. Upon information and belief, Boettcher's conduct has repeatedly resulted in violation of the anti-fraud provisions of state and federal securities laws and constitutes acts indictable under 18 U.S.C. § 1341 (relative to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). Such conduct includes, without limitation, the following:

"a. Fraudulently acting as the general partner in causing the sale of interests in the 1900 Grant Associates Limited Partnership by the use of the United States mails and interstate wire service, in violation of federal and state securities laws and which involve mail and/or wire fraud."

"b. The alleged solicitation of the Chilcott Commodities Fund, reputed to be one of the largest commodity frauds in the United States, which resulted in Boettcher & Company being named in various lawsuits, including the United States District Court, District of Colorado, Civil Action No. 82–889, where it is alleged by the court-appointed receiver for the Chilcott Commodities Fund that Boettcher acted either in concert with Chilcott or aided and abetted and/or recklessly assisted Chilcott during the years 1980 and 1981. It is alleged that Boettcher & Company, as a registered broker-dealer and registered commission merchant, solicited Chilcott to use Boettcher as Chilcott's brokerage firm, which resulted in Chilcott being registered as an 'associated person' and a 'commodity advisor' with Boettcher. It is alleged that the acts were attended by fraud and malice. It is believed that Chilcott was convicted of various felony offenses in the United States District Court, District of Colorado. The use of the U.S. mails and interstate wire service is alleged as the basis for this claim."

"c. The sale of an interest or interests in an oil and gas program known as LEXCO to an 81–year old woman named Harriet Reno and other unknown members of her family. An individual named James Lathan is the controlling person of LEXCO and he and the LEXCO gas and oil programs are named in various lawsuits containing allegations of fraud. It is believed that Boettcher & Company, Inc. and Boettcher Investment Corporation are the defendants in the United States District Court, Civil Action No. C–86–0174, in the District of Wyoming, in a lawsuit brought by Harriet Reno claiming violation of the anti-fraud provisions of state and federal securities laws and of RICO relating to the sale to her by Boettcher of the LEXCO programs."

"d. The sale of limited partnership interests in Western Pay Television Partners, which resulted in the Boettcher entities being named as defendants in a lawsuit filed by 45 of the 55 limited partners in the partnership in the United States District Court, District of Colorado, Civil Action No. 88–C–1205. The plaintiffs in that action allege that Boettcher violated the anti-fraud provisions of federal and state securities laws and RICO."

"44. Each sale of a Bond to plaintiffs as described in paragraphs 1 through 32 above constitutes the obtaining of money or property by Boettcher by means of false or fraudulent pretense, representation or premise through the use of the U.S. mails, which constitute acts indictable under 18 U.S.C. § 1341."

"45. Each sale of a Bond to plaintiffs as described in paragraphs 1 through 32 above constitutes a scheme or artifice to

defraud in the obtaining of money or property by means of a false or fraudulent pretense, representation, or premise in interstate commerce by Boettcher, which constitutes acts indictable under 18 U.S.C. § 1343."

"46. Prior to and after Boettcher's actions described above involving the plaintiffs, Boettcher engaged in similar acts with other customers by engaging in a planned effort to obtain either money or property by means of false or fraudulent pretense and representations, constituting acts indictable under 18 U.S.C. § 1341 and § 1343."

"47. In connection with the predicate acts described above Boettcher acted singly and/or in concert as principals, co-conspirators, aiders or abettors."

"48. The acts of Boettcher as described above constitute a 'pattern of racketeering activity' as that term is defined in 18 U.S.C. § 1961 and a 'prohibited activity' within the meaning of 18 U.S.C. § 1962."

Defendants contend that the plaintiffs' allegations do not satisfy the RICO pattern requirement because they involve four transactions (sale of real property, private placement of cable television partnership interests, sales of interests in oil and gas programs, and sales of a commodities fund) that are completely unrelated to the bonds purchased by the plaintiffs. In addition, the defendants assert that the separate bond sales to the plaintiffs do not constitute a "pattern" because at most they are part of a single transaction perpetrated through one scheme involving acts of wire and mail fraud.

With respect to the defendants' first argument, the recent decision of *Edwards v. First National Bank*, 872 F.2d 347 (10th Cir.1989) illustrates why the plaintiffs' RICO claim must be dismissed. In support of their RICO claim the *Edwards* appellants asserted several acts of alleged threats by creditors to them as debtors that they would be jailed if their debts were not repaid. Assuming that the threats constituted extortion, the Tenth Circuit held that these several "predicate acts" failed to sat-

isfy the "pattern" requirement since they were unrelated.

In the instant case, I have assumed for purposes of this motion that the plaintiffs' allegations of mail and wire fraud describe indictable predicate acts. I conclude, however, that the four transactions mentioned in paragraphs 43(a) through (d) are completely unrelated to the bond sales asserted in paragraphs 13, 44 and 45. Plaintiffs' allegations fail to satisfy the continuity plus relationship requirement necessary to a RICO pattern.

The *Torwest, supra*, decision supports the validity of the defendants' second argument. Although the plaintiffs are multiple victims, only one scheme, *i.e.*, sale of the bonds, allegedly was utilized to defraud them. Thus, the plaintiffs' allegations assert only one scheme, one result, one set of participants and one method of commission.

For the reasons stated in *Edwards, supra*, and *Torwest, supra*, the plaintiffs have not sufficiently alleged a "pattern of racketeering activity" under RICO and their Third Claim must be dismissed.

I note with some interest, however, the recent Second Circuit decision of *Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.1989). The district court there found insufficient the RICO claim asserted by five plaintiffs based on the mailings of allegedly fraudulent materials relating to the sale of condominium apartments. The trial court concluded that no "pattern of racketeering activity" had been pleaded because all alleged misrepresentations appeared in one document even though the plaintiffs alleged several schemes to defraud potential buyers, partners and investors. The Second Circuit agreed, but reversed because the plaintiffs should have been permitted to amend their complaint to add allegations including, *inter alia*, that the initial offering plan was mailed to the tenants of 8,286 apartments and other potential buyers, that the offering contained several misrepresentations and omissions, and that the misrepresentations were perpetuated in several amendments to the initial condominium offering.

The Second Circuit acknowledged that in recent opinions its analysis of "relatedness" and "continuity" had shifted from RICO's "enterprise" element to the "pattern" element. In concluding that the plaintiffs' proposed amendments to the complaint were facially adequate, the appellate court stated:

"[T]here can be no question that the thousands of alleged mail frauds here had the necessary interrelationship to be considered a pattern. All of the mailings were to groups of persons related by either their tenancy in [the] apartments or their potential interest in purchasing such apartments. All of the frauds allegedly had the same goal, *i.e.*, inflating the profits to be made by the defendants in the sale of the ... apartments...."

"Further, assuming that one could ever characterize more than 8,000 mailings as 'isolated' or 'sporadic' as a matter of law, which we doubt Congress would have envisioned, we interpret the amended complaint as containing sufficient other allegations to reveal continuity or the threat of continuity...."

"In sum, read with ordinary charity, the amended complaint alleged that on each of several occasions defendants had mailed fradulent documents to thousands of persons and that there was reason to believe that similarly fraudulent mailings would be made over an additional period of years. These allegations sufficed to set forth acts that cannot be deemed, as a matter of law, isolated or sporadic. We conclude that the relatedness and continuity factors have been adequately revealed in the pleading and that the amended complaint did not fail to satisfy the pattern requirement." *Id.* at 1392.

It thus appears that the Second Circuit has taken the position that a RICO pattern can be established without proof of multiple schemes, multiple episodes or multiple transactions, and that separate acts of racketeering activity, *i.e.*, mail fraud, closely associated in time and space are sufficient. This broad interpretation of RICO does not presently prevail in the Tenth Circuit, whose pronouncements, of course, are binding on this court.

Plaintiffs' failure to sufficiently plead a RICO pattern is not the only fatal flaw in their amended and restated complaint. I agree with the defendants that they have not properly pleaded the RICO "enterprise" element.

■ Plaintiffs allege that Boettcher & Company, Boettcher Properties, Ltd., Boettcher & Company, Inc., Boettcher Investment Corporation and John Does 1 through 10 engaged in a pattern of racketeering activity and constitute an "enterprise" as defined at 18 U.S.C. § 1961(4). Amended and restated complaint, para. 50. All of the circuit courts of appeal (except the Eleventh Circuit) that have considered the issue agree that the RICO "person" sued as defendant must be distinct from the RICO "enterprise." *Bishop v. Corbitt Marine Ways, Inc.,* 802 F.2d 122 (5th Cir. 1986). This pleading requirement recently was described, in *Elliott v. Foufas,* 867 F.2d 877 (5th Cir.1989) as follows:

"The enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.' ... The defendant who commits the predicate offenses must also be distinct from the enterprise.... If the defendant is a legal entity, the plaintiffs must do more than merely establish that the corporation, through its agents, committed the predicate acts in the conduct of its own business.... If the enterprise alleged is an 'association in fact' enterprise, the plaintiff must show evidence of an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure ... *The fact that officers or employees of a corporation,* in the course of their employment, *associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation....* Finally, the plaintiff must plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts...." *Id.* at 881. (Emphasis added).

Plaintiffs impermissibly assert that the Boettcher defendants and John Does 1 through 10 constitute the RICO enterprise. Since the plaintiffs have not alleged an enterprise separate and apart from the sued defendants, their RICO claim must be dismissed.

██ Defendants' third argument is that the plaintiffs have not alleged fraud with particularity as to their RICO claim. Rule 9(b) requires that the plaintiffs identify the particular defendants with whom they dealt, the dates the alleged fraudulent statements were made and by whom, and a description of the substance of the misstatements or half-truths allegedly made. *Saine v. A.I.A., Inc.,* 582 F.Supp. 1299 (D.Colo.1984); *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982). Plaintiffs have not alleged these particular matters and thus have failed to comply with Rule 9(b).

For the reasons stated, the defendants' motion to dismiss the plaintiffs' RICO claim is granted and the Third Claim is dismissed.

Last, the defendants urge dismissal of the plaintiffs' Third through Ninth Claims as to those plaintiffs who were parties to arbitration agreements. Plaintiffs concede that arbitration is proper as to certain plaintiffs, but assert that the claims should be stayed rather than dismissed.

I have previously dismissed the plaintiffs' Third through Ninth Claims on other grounds. It thus is unnecessary for me to consider the defendants' arbitration argument, and the defendants' motion to dismiss on this ground is denied as moot.

Accordingly, it is ORDERED that:

(1) Defendants' motion to dismiss the plaintiffs' Third through Ninth Claims is granted and those Claims are dismissed from the amended and restated complaint;

(2) Plaintiffs' Eleventh through Fourteenth Claims are dismissed *sua sponte;*

(3) Dismissal of the plaintiffs' Fourth through Ninth Claims, and Eleventh through Fourteenth Claims, the pendent state claims, is without prejudice to the plaintiffs' right to reassert those claims in state court;

(4) Plaintiffs' RICO claim, the Third Claim, is dismissed without prejudice for failure to state a claim upon which relief can be granted; and

(5) Within eleven days, the plaintiffs shall file a Second Amended Complaint setting forth all remaining claims consistent with this Order.

(6) It is further ordered that, within 20 days, counsel and the parties are ordered to confer in a good faith effort to settle this dispute. Counsel shall report to the court in writing within 30 days on the results of their settlement efforts and state whether a settlement conference before a magistrate would be of assistance.