7 F.3d 1045
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Delmer L. STAGNER, Appellant,
v.
Paul E. PITTS, William V. Wiist, Thomas Dunlap, and the
Ardmore Institute of Health, an Oklahoma
Corporation, Defendants-Appellees.
 No. 93-7021.
 United States Court of Appeals, Tenth Circuit.
 Sept. 20, 1993.
 
 Before LOGAN, MOORE, and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 In an earlier guise this court has already considered this litigation and affirmed the district court's ruling that its jurisdiction was supplanted by the state court that had already exercised and was continuing to exercise jurisdiction over the administration of the contested trust. Cassity v. Pitts, 995 F.2d 1009 (10th Cir.1993). In the interim, between the first appeal and our decision, the district court imposed Rule 11 sanctions upon counsel for the appellants. Mr. Stagner now appeals this decision. We exercise jurisdiction and affirm.
 
 
 3
 It is well established that the standard of review of an order imposing sanctions under Fed.R.Civ.P. 11 is whether the order was an abuse of discretion. Dodd Ins. Services, Inc. v. Royal Ins. Co. of America, 935 F.2d 1152, 1155 (10th Cir.1991). This standard presents no particular difficulty in this case as there is nothing in the record to suggest the district court misunderstood or incorrectly applied the law or made a clear error in its assessment of the facts.
 
 
 4
 The details of this litigation may be found in our prior published decision. The district court entered its five-page order setting forth its findings and conclusions concerning the imposition of sanctions, which we attach hereto. To summarize the district court, it found that a reasonable, competent attorney would not find a good faith argument for a RICO claim; that Mr. Stagner's failure to disclose the prior litigation in this case in his complaint was sanctionable; that a reasonable attorney would not have thought jurisdiction in the district court was available; and that the filing of the complaint was in bad faith and a reasonable attorney would not create vexatious litigation in successive forum to avoid the State court ruling. The result is sanctions in the amount of $11,986.25 for attorney fees, and $1,811.00 for costs.
 
 
 5
 Mr. Stagner appeals this order setting forth five issues as follows:
 
 
 6
 1. Whether it was error to conclude that a state court had exclusive jurisdiction and to dismiss the action on that basis when the federal action sought only in personam relief and the plaintiffs had dismissed their claims in the state court.
 
 
 7
 2. Whether the district court abused its discretion in concluding that a reasonable attorney would not have alleged the existence of a "pattern of racketeering activity" under 18 U.S.C. § 1961(5).
 
 
 8
 3. Whether the district court abused its discretion in imposing upon plaintiffs' counsel a duty to plead affirmatively the existence and nature of other litigation, including matters which were not closely related to the instant case.
 
 
 9
 4. Whether the district court abused its discretion in finding that the plaintiffs' action constituted an impermissible collateral attack on orders of a state court.
 
 
 10
 5. Whether the district court abused its discretion in setting the amount of the sanctions award by failing to consider what would have been the least amount of monetary sanctions that would have effectively deterred future violations.
 
 
 11
 The law we must apply is neither novel nor complex. Rule 11 provides that:
 
 
 12
 Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
 
 
 13
 In White v. General Motors Corp., Inc., 908 F.2d 675 (10th Cir.1990), cert. denied, 498 U.S. 1069 (1991), we set forth the applicable standard and basis for review under this section and it need not be repeated here in detail. The relevant portion of the White analysis is "whether an objectively reasonable basis for [the] claim 'was demonstrated,' " id. at 680 (citation omitted), and whether the complaint was filed in good faith.
 
 
 14
 Mr. Stagner challenges each aspect of the district court's order. He first alleges that the district court erroneously concluded the state court had exclusive jurisdiction. This argument has been decided against Mr. Stagner in Cassity v. Pitts, 995 F.2d 1009. This assertion will not be reexamined; Mr. Stagner is correct that there is some complexity to this area of law, but incorrect that the district court abused its discretion in finding that a reasonable attorney would not have found a plausible claim to jurisdiction on the facts of this litigation.
 
 
 15
 Mr. Stagner's second assertion is that his complaint sufficiently alleged a pattern of racketeering activity to state a cause of action under RICO. The district court found, after applying H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989), that the attempted RICO claim was frivolous. The district court stated that "[t]o establish a 'pattern' of racketeering activity, it is necessary to show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." This is an accurate statement of the law. Northwestern Bell, 492 U.S. at 239 ("to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity"). The thrust of the complaint is that trustees of the contested trust were attempting to convert the trust corpus utilizing a series of fraudulent and deceitful acts. The district court was not in error in finding that a reasonable attorney would not have found the circumstances to present the threat of continued criminal activity of either the closed or open ended variety. See Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 922-23 (7th Cir.1992); Boone v. Carlsbad Bancorporation, Inc., 972 F.2d 1545, 1556 (10th Cir.1992); Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir.1990) ("[w]hile a single scheme may suffice in some instances, here there is simply no indication of a threat of continuing illegal activity."); Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1273-74 (10th Cir.1989); Torwest DBC, Inc. v. Dick, 810 F.2d 925, 928-29 (10th Cir.1987). The district court did not misapply the law, or reach erroneous factual conclusions.
 
 
 16
 The district court also imposed sanctions because Mr. Stagner failed to disclose the prior course of this litigation in his complaint. Mr. Stagner's third challenge is to this finding. Mr. Stagner is incorrect that he had no duty to disclose the existence and nature of the prior litigation. We view White as dispositive of this issue. There we approved sanctions when counsel knew of releases and failed to disclose and counsel failed to present a colorable argument to avoid the releases. White, 908 F.2d at 682. The same situation prevails here. The lesson is clear: when counsel seeks to litigate that which has been litigated, even though under a different theory, the duties imposed upon counsel as an officer of the court demand disclosure. Mr. Stagner also asserts the district court misread the allegations of the complaint and asserts the complaint was not a collateral attack upon the state court's rulings. Semantically counsel may be correct; however, the complaint is, in fact, precisely as the district court described it--"a continuing and blatant attempt to collaterally attack and avoid the [state court] rulings." The district court's application of the law and its factual findings were not erroneous. Likewise, the district court's finding that the complaint was imposed for an improper purpose is not clearly erroneous.
 
 
 17
 The second principal challenge to the imposition of sanctions is that the district court made no effort to determine the minimum amount of monetary sanctions necessary to accomplish Rule 11's primary policy of deterrence. Mr. Stagner submitted evidence of $59,951 of nonexempt assets. He asserts the approximately $14,000 in sanctions to be excessive. White requires the trial court to consider the offender's ability to pay. Id. at 685. The record does not reflect that the trial court failed to consider Mr. Stagner's ability to pay, but rather that a financial statement was submitted. There is nothing to suggest this statement was not fully considered in determining the reasonableness of the sanction. The record contains no evidence showing the amount of the sanction to be excessive. We cannot say the trial court abused its discretion.
 
 
 18
 The courts have a duty to protect the public from frivolous litigation. There was a day when clever counsel were admired by some for inventive methods to resurrect dead litigation. That day has passed. When counsel seek to relitigate that which has previously been litigated they must be fully prepared to answer for their actions in continuing to instigate litigation.
 
 
 19
 Mr. Stagner has failed to persuade this court that the trial court erred in imposing sanctions. The judgment of the district court is AFFIRMED for substantially the same reasons set forth by the district court.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT FOR THE
 EASTERN DISTRICT OF OKLAHOMA
 Edward J. Cassity, et al., Plaintiffs
 
 20
 v.
 
 Paul E. Pitts, et al., Defendants
 No. CIV-92-345-S
 ORDER
 
 21
 Granting Defendants' Motion for Sanctions and Denying Plaintiffs' Counter Motion for Sanctions
 
 
 22
 Plaintiffs' complaint, filed June 6, 1992, seeks damages from the defendants individually for their alleged wrongful acts concerning the ownership, control, and administration of the Johnson trust indenture and fraudulent inducement in the execution of a prior settlement agreement between the parties. Federal jurisdiction in this case is based upon plaintiffs' first cause of action for alleged violations of the RICO statutes, 18 U.S.C. §§ 1861 et seq. Plaintiffs' second cause of action is a pendent state claim for fraud based on the allegations in the first cause of action.
 
 
 23
 On July 6, 1992, defendants filed two motions: (1) to dismiss for lack of subject matter jurisdiction and for failure to state a claim, and (2) for imposition of sanctions pursuant to Rule 11 for filing a complaint which was not well-grounded in fact or not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. On September 2, 1992, the court granted the defendants' motion to dismiss for lack of subject matter jurisdiction. In that order the court recited the following background and history of this and related litigation between the parties:
 
 
 24
 1. On August 21, 1984, upon the death of Otey G. Johnson, a trust indenture executed by him during his lifetime became irrevocable. The assets of the trust indenture were an oil and gas trust and a residuary trust, whose primary beneficiaries are charitable entities, including the defendant Ardmore Institute of Health ("AIH"). The other defendants are trustees of the trust indenture. The plaintiffs are nephews of Otey G. Johnson, and they have contested the Johnson estate and trust indenture.
 
 
 25
 2. During litigation in the State District Court in Carter County, Oklahoma, the plaintiffs entered into and executed a settlement agreement with the defendants, giving a general release of all their interests in the trust indenture and any claims against the defendants. That settlement agreement was approved by the District Court of Carter County, Oklahoma. That state court has also ruled on the validity of the Trust Indenture and its amendments, and in its order of August 3, 1987, construing and reforming the trust indenture, specifically retained continuing jurisdiction over the trust indenture for all future constructions of the trust or the duties, obligations and responsibilities of the trustees. (Exhibit A, C, and D, Defendants' Brief to Dismiss).
 
 
 26
 3. Thereafter, the plaintiffs pursued litigation in Carter County, Oklahoma, to set aside their settlement agreement on the grounds of fraudulent inducement.
 
 
 27
 4. Plaintiffs sought declaratory judgment and in personam damages against these defendants concerning the trust indenture in the United States District Court for the Northern District of Texas. That court dismissed plaintiffs' claims for lack of subject matter jurisdiction. (Exhibit B, Defendants' Brief to Dismiss).
 
 
 28
 5. Next, the plaintiffs sought to have the oil and gas trust declared invalid in the District Court for Oklahoma County, Oklahoma. That court, holding that the District Court of Carter County, Oklahoma, had exclusive jurisdiction over the trust indenture, stayed its case.
 
 
 29
 6. Just days prior to the District Court of Carter County, Oklahoma, hearing plaintiffs' claims of fraudulent inducement concerning the settlement agreement, plaintiffs dismissed their claims in Carter County and filed this case in this court.
 
 
 30
 As another example of the type of litigation filed by plaintiffs in their dispute with, and attempted collateral attacks on the rulings of, the Carter County District Court, the court notes the protest filed by these plaintiffs with the Oklahoma Tax Commission. In its recommendation and motion to dismiss, the Tax Commission noted that "Protestants [plaintiffs] dissatisfaction stems not from any tax liability of the estate, but rather, protestants are dissatisfied with the rulings of the Carter County District Court." Further, "protestants action is not within the jurisdiction of this administrative tribunal, but rather within the jurisdiction of the Carter County District Court or the Oklahoma Supreme Court by appeal." (Defendants' reply brief for sanctions, pp. 7-8).
 
 
 31
 The court also finds that plaintiffs' allegations in their complaint ignore and are contrary to prior rulings by the Carter County District Court, which the plaintiffs seek to avoid by dismissing their proceedings in Carter County and forum shopping for different, and hopefully, favorable rulings. (Defendants' Brief to dismiss, p. 17; Defendants' Brief for sanctions pp. 3-5). This is not a proper practice, and one which this court views with disfavor.
 
 
 32
 In an inventive, but improperly veiled, attempt to obtain "arguable" jurisdiction in this court, plaintiffs' brought a RICO claim in their first cause of action in this case. The defendants have contented that plaintiffs have failed to state a valid RICO cause of action. However, because this court previously held it lacked jurisdiction, it did not address that issue in its order dismissing this case. Plaintiffs' RICO allegations are nothing more than their state fraud claims against these defendants. Indeed, plaintiffs' allegations supporting their state claim for fraudulent inducement parrot or adopt their RICO allegations. (Plaintiffs' complaint). In an attempt to satisfy the "racketeering activity" element required by the RICO statute, 18 U.S.C. § 1962, the plaintiffs contend that wire transfers and mailings by the defendants in the course of their duties and administration of the Johnson trust and probate constituted mail fraud and wire fraud. To establish a "pattern" of racketeering activity, it is necessary to show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. Plaintiffs allege but one scheme, to defraud the plaintiffs out of their inheritance, which they allege has been accomplished. In circumstances which this court finds similar to this case, the Tenth Circuit has held that such does not state a cause of action under the RICO statute. Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1273-1274 (10th Cir.1989); H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989), citing with approval, Torwest DBC, Inc. v. Dick, 810 F.2d 925, 928-929 (10th Cir.1989). This court finds that the wires, phone calls, and mailings by defendants are not a "pattern" of racketeering activity as contemplated by the RICO statute, particularly in light of the alleged completion of defendants' scheme to defraud plaintiffs. It is hard to imagine in this day and time of a business deal, an execution of a contract, an administration of an estate, etc. that would not involve the use of the mail, phone calls, and/or wire or bank transfers. This court finds it difficult to accept that, should fraud, deceit, and/or misrepresentation be alleged in the course of such dealings, it was the intent of Congress that federal jurisdiction needed to be invoked and the RICO statutes were passed to fulfill that need. As stated by the Circuit Court in Condict v. Condict, 826 F.2d 923, 929, (10th Cir.1987), "this is but an unsuccessful effort to dress a garden-variety [state] fraud and deceit case in RICO clothing."
 
 
 33
 Rule 11, Federal Rules of Civil Procedure, provides, in pertinent part, "The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." In determining whether or not to impose sanctions for a violation of this Rule, the court must apply an objective standard, or whether a reasonable and competent attorney would believe in the merit of an argument. White v. General Motors Corp., 908 F.2d 675, 680 (10th Cir.1990); Dodd Insurance Services, Inc. v. Royal Insurance Company of America, 935 F.2d 1152 (1991). The court may impose attorney fees as an appropriate sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or delays or disrupts the litigation or hampers a court order's enforcement. Chambers v. Nasco, Inc., 111 S.Ct. 2123 (1991); Sterling Energy Limited v. Friendly National Bank, 744 F.2d 1433 (10th Cir.1984).
 
 
 34
 The court finds that plaintiffs' RICO claim is frivolous and nothing more that a continuing and blatant attempt to collaterally attack and avoid the Carter County District Court's rulings on the validity and administration of the trust, and to harass the defendants into a new settlement on their state claim for fraudulent inducement because of their post-dissatisfaction with their prior court approved agreement which settled any and all of plaintiffs' rights and claims in the Johnson estate. The court further finds that plaintiffs' counsel was in bad faith in filing this complaint and in omitting the litigation history of the subject matter of this claim. Further, the court finds that a reasonable and competent attorney, given the history of this litigation, would not find a good faith argument for a RICO claim, and such attorney would not create vexatious and multiplicitous litigation in an effort to avoid unfavorable rulings of a state court with competent jurisdiction.
 
 
 35
 The court finds that plaintiffs' attorney should be sanctioned for violating Rule 11, and that a reasonable amount of the sanction is the payment of defendants' attorneys' fees, or $11,986.25, and costs, or $1,811.00, incurred in this action.
 
 
 36
 Denying Plaintiffs' Countermotion for Sanctions
 
 
 37
 Plaintiffs seek sanctions against the defendants because the defendants sought sanctions against them. Having granted the defendants' motion for sanctions against the plaintiffs, the court finds plaintiffs' countermotion for sanctions without merit, and it is as frivilous and vexatious as their lawsuit, and it is denied.
 
 
 38
 IT IS ALL SO ORDERED this 4th day of February, 1993.
 
 
 39
 /s/ Frank H. Seay
 
 FRANK H. SEAY
 United States District Judge
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3