886 F.2d 1262
 RICO Bus.Disp.Guide 7320
 Fred W. PHELPS, Sr., Plaintiff-Appellant and Cross-Appellee,
v.
The WICHITA EAGLE-BEACON; Steve Tompkins; Barry Holtzclaw;
W. Davis Merritt; and Philip A. Harley,
Defendants-Appellees and Cross-Appellants.
 Nos. 86-1977, 86-1998 and 86-2018.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 29, 1989.
 
 Margie J. Phelps and Elizabeth M. Phelps (John R. Balhuizen, on the briefs) of Phelps-Chartered, Topeka, Kan., for plaintiff-appellant.
 Deanne Watts Hay of Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., and David G. Seely (Gerrit H. Wormhoudt, William P. Tretbar, and Lyndon W. Vix of Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., on the briefs) of Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for defendants-appellees.
 Before EBEL and McWILLIAMS, Circuit Judges, and JENKINS, District Judge.*
 EBEL, Circuit Judge.
 
 
 1
 This is an appeal and cross-appeal from a decision of the United States District Court for the District of Kansas. Plaintiff-appellant Fred W. Phelps brought suit in the district court alleging that defendants conspired to publish defamatory articles about him in violation of federal civil rights statutes, the First and Fourteenth Amendments, and the Racketeer Influenced and Corrupt Organizations Act (RICO). The district court dismissed all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Phelps v. Wichita Eagle-Beacon, 632 F.Supp. 1164 (D.Kan.1986). The district court also denied defendants' motion for sanctions. We affirm in part and reverse in part.FACTS
 
 
 2
 On February 13, 1983, defendant Wichita Eagle-Beacon published two articles about plaintiff. One article, entitled "Phelps' Procedures Out of Ordinary, Report Shows," summarized and quoted an investigative report about plaintiff prepared by the Kansas state attorney general's office. The report discussed how plaintiff had brought numerous lawsuits soon after alleged incidents and settled them for a fraction of the amount sought. Critics of plaintiff were quoted in the article as stating that he brought "strike suits" for "nuisance value."
 
 
 3
 The other article, entitled "On a Crusade--Phelps' Work Raises Hopes, and Questions," was more biographical. It discussed plaintiff's background and education, his representation of the poor and minorities in Kansas, and some of the controversies surrounding him, including his disbarment from Kansas courts in 1979. The article stated that many people saw him as a crusader for the rights of the poor and minorities. The article included statements by plaintiff and observed that he "sees himself as the ideological heir of a long line of Baptist preacher-lawyers who used the Bible as a source of inspiration."
 
 
 4
 After publication of the articles, plaintiff brought suit in the district court seeking damages and injunctive relief against the newspaper, employees of the newspaper, and Philip Harley, a former assistant attorney general in Kansas. Plaintiff alleged a conspiracy to defame him and present him in a false light, in violation of a number of federal civil rights statutes, the United States Constitution, and the Racketeer Influenced and Corrupt Organizations Act ("RICO").
 
 ISSUES
 
 5
 There are seven issues on appeal: (1) whether the district court properly dismissed plaintiff's claim under 42 U.S.C. Sec. 1981; (2) whether the district court properly dismissed plaintiff's claim under 42 U.S.C. Sec. 1983; (3) whether the district court properly dismissed plaintiff's claim under 42 U.S.C. Sec. 1985; (4) whether the district court properly dismissed plaintiff's claim under 18 U.S.C. Secs. 1961-1968 (RICO); (5) whether plaintiff's claims are barred by the First Amendment; (6) whether plaintiff should have been granted leave to amend his complaint; and (7) whether plaintiff should be assessed attorneys' fees or sanctions for bringing this action.
 
 STANDARD OF REVIEW
 
 6
 In reviewing the dismissal of plaintiff's complaint for failure to state a claim, this court "must accept as true the plaintiff's well-pleaded factual allegations and all reasonable inferences must be indulged in favor of the plaintiff." Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir.1987). We should affirm the district court's dismissal "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Shoultz v. Monfort of Colorado, Inc., 754 F.2d 318, 321 (10th Cir.1985) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)), cert. denied, 475 U.S. 1044, 106 S.Ct. 1259, 89 L.Ed.2d 569 (1986).
 
 I.
 SECTION 1981
 
 7
 In his First Amended Complaint, plaintiff alleges that defendants conspired to publish false articles about him because he represents black people, in violation of 42 U.S.C. Sec. 1981.[1] (First Amended Complaint at p 9.) Although the district court recognized that whites may bring claims under Section 1981, see McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 287, 96 S.Ct. 2574, 2582, 49 L.Ed.2d 493 (1976), it nevertheless dismissed plaintiff's claim for lack of standing. The district court held that discrimination on the basis of association with a particular racial group does not state a cause of action under Section 1981. Rather, the district court held that a Section 1981 claim must allege discrimination against the plaintiff on the basis of his race.
 
 
 8
 We agree with plaintiff that the district court erred in its analysis. As this court and other circuits have held, alleged discrimination against a white person because of his association with blacks may state a cause of action under Section 1981. See, e.g., Skinner v. Total Petroleum, Inc., 859 F.2d 1439, 1447 (10th Cir.1988) (white employee who alleged that he was terminated for assisting black employee could maintain Section 1981 action); Alizadeh v. Safeway Stores, Inc., 802 F.2d 111, 114 (5th Cir.1986) (white plaintiff discriminated against because of marriage to a non-white could maintain a claim under Section 1981); Parr v. Woodmen of the World Life Ins. Co., 791 F.2d 888, 890 (11th Cir.1986) (same); Fiedler v. Marumsco Christian School, 631 F.2d 1144 (4th Cir.1980) (Section 1981 held to prohibit a private sectarian school from terminating a contractual relationship with a white student because of her association with a black student at the school); DeMatteis v. Eastman Kodak Co., 511 F.2d 306, 312 (2d Cir.) (suit allowed under Section 1981 where white employee claimed his company forced him to retire because he sold his house to a fellow black employee), modified on other grounds, 520 F.2d 409 (2d Cir.1975). Thus, we conclude that plaintiff does have standing to sue under Section 1981.
 
 
 9
 Nevertheless, plaintiff's Section 1981 claim was properly dismissed because, as defendants point out, plaintiff has not alleged that he was deprived of an interest protected by Section 1981. By its language, Section 1981 establishes four protected interests: (1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments. Plaintiff has alleged that defendants defamed him and invaded his privacy. But he has not alleged that defendants deprived him of any of the enumerated rights in Section 1981.
 
 
 10
 The cases plaintiff cites in support of his Section 1981 argument all involve interference with the first enumerated interest--the right to make and enforce contracts. Those cases are distinguishable from this case because they all involve actual loss of employment or other contract interests. See, e.g., Fiedler v. Marumsco Christian School, 631 F.2d 1144 (4th Cir.1980) (plaintiff was expelled from private school); Winston v. Lear-Siegler, Inc., 558 F.2d 1266 (6th Cir.1977) (plaintiff was fired by employer); DeMatteis v. Eastman Kodak, 511 F.2d 306 (2d Cir.) (plaintiff was forced into early retirement), modified on other grounds, 520 F.2d 409 (2d Cir.1975). By contrast, plaintiff here merely alleges possible loss of future opportunities. Plaintiff has alleged that defendants' actions have interfered with his "prospective business opportunities," (First Amended Complaint at p 11), but we find that vague and conclusory allegation insufficient to state a deprivation of the right to make and enforce contracts that is protected by Section 1981. Plaintiff has the same right as others to enter into contracts with those who wish to contract with him. Even if the state has defamed him and thus arguably made him less attractive to some who otherwise might want to contract with him, the defamation does not deny him the basic right to contract. Cf. Patterson v. McLean Credit Union, --- U.S. ----, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (Section 1981's contract clause protects only the right to enter into and enforce contracts). Therefore, we affirm the dismissal of plaintiff's Section 1981 claim. See, e.g., Seibert v. Univ. of Oklahoma Health Sciences Center, 867 F.2d 591, 597 (10th Cir.1989) ("An appellate court may affirm the judgment of a district court on any grounds that find support in the record, provided the litigants have had a fair opportunity to develop the record.").II.
 
 SECTION 1983
 
 11
 In his First Amended Complaint, plaintiff claims that the alleged defamation violated 42 U.S.C. Sec. 1983.[2] In support of that claim, he argues on appeal that defendants' actions deprived him of a liberty interest and a property right without due process, deprived him of his rights under the Equal Protection Clause, and violated his First Amendment rights.
 
 A. Due Process
 
 12
 The district court concluded that plaintiff had not sufficiently alleged a deprivation of a property or liberty interest, which is required to state a claim for denial of due process under Section 1983. Relying on Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the district court held that plaintiff's alleged damage to his reputation was not sufficient to state a due process claim under Section 1983. In Davis, the police included the plaintiff's name and photograph in a flyer of active shoplifters distributed to merchants. The plaintiff in that case alleged that the flyer was defamatory and deprived him of his rights in violation of Section 1983 because it damaged his reputation and "would seriously impair his future employment opportunities." Id. at 697, 96 S.Ct. at 1159. The Supreme Court upheld a dismissal of his complaint, holding that "reputation alone, apart from some more tangible interests such as employment" is not a sufficient interest to establish a claim of denial of due process under Section 1983. Something more than mere defamation must be involved. Id. at 701, 96 S.Ct. at 1161.
 
 
 13
 We agree with the district court that Davis compels the conclusion that plaintiff has not sufficiently alleged a deprivation of a liberty or property interest under Section 1983. Plaintiff alleges in his First Amended Complaint that defendants placed a "defamatory cloud" over his "employment opportunities." (First Amended Complaint at p 11.) That allegation is substantially similar to the allegation in Davis which was found insufficient. Like the claim in Davis, plaintiff's claim in this case is a "classical claim for defamation." Id. at 697, 96 S.Ct. at 1159. We conclude, as the Court concluded in Davis, that:
 
 
 14
 [plaintiff's] interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change in [plaintiff's] status as theretofore recognized under the State's laws. For these reasons we hold that the interest in reputation asserted in this case is neither "liberty" nor "property" guaranteed against state deprivation without due process of law.
 
 
 15
 424 U.S. at 712, 96 S.Ct. at 1165.
 
 
 16
 Plaintiff seeks to rely on our decision in Corbitt v. Andersen, 778 F.2d 1471 (10th Cir.1985). The plaintiff in Corbitt, a psychologist, sued under Section 1983 claiming that the defendant had conducted a campaign to discredit the plaintiff's professional standing. We concluded that the plaintiff had made out a prima facie case of a violation of a liberty interest under Section 1983. That case is distinguishable from this one because in that case the plaintiff had alleged and presented evidence of present harm to his established business relationships. 778 F.2d at 1475. In contrast, plaintiff here merely has alleged speculative future harm to prospective relationships as a result of the generalized damage to his reputation.
 
 
 17
 This court has made it clear since Corbitt that damage to "prospective employment opportunities" is too intangible to constitute a deprivation of a liberty or property interest. Setliff v. Memorial Hosp. of Sheridan County, 850 F.2d 1384, 1397 n. 18 (10th Cir.1988). Thus, even if defendants' actions made plaintiff less attractive to employers or clients, that is insufficient to state a deprivation of a liberty or property interest under Section 1983. Id. at 1396. Rather, plaintiff's status as a lawyer and his existing legal rights must be significantly altered before a claim arises. Id. See also Ewers v. Board of County Commissioners of Curry County, 802 F.2d 1242, 1247 (10th Cir.1986) (to establish a claim of deprivation of a liberty interest in reputation under Section 1983, plaintiff must allege stigma plus harm to some other tangible interest such as employment), reh'g granted, 813 F.2d 1583 (1987), cert. denied, 484 U.S. 1008, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988),opinion on reh'g, 874 F.2d 736 (10th Cir.1989) (cited proposition unaffected); Goulding v. Feinglass, 811 F.2d 1099, 1102-03 (7th Cir.) (for lawyer to establish a deprivation of a property interest, his legal rights or status as a lawyer must have been "removed or significantly altered"; mere injury to his business reputation as a lawyer making him less attractive to clients is not sufficient), cert. denied, 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987); Perry v. Federal Bureau of Investigation, 781 F.2d 1294, 1302 (7th Cir.) ("a liberty interest is not implicated merely by a reduction in an individual's attractiveness to potential employers"), cert. denied, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986).
 
 
 18
 Here, plaintiff has not been foreclosed from practicing law. At most, he alleges that the newspaper articles made him less attractive to potential clients. That allegation is insufficient to state a deprivation of a liberty or property interest under Section 1983. As the Supreme Court repeatedly has stressed, Section 1983 was not meant to federalize state tort law. See, e.g., DeShaney v. Winnebago County Dept. of Social Services, --- U.S. ----, 109 S.Ct. 998, 1007, 103 L.Ed.2d 249 (1989); Paul v. Davis, 424 U.S. at 701, 96 S.Ct. at 1160.
 
 B. Equal Protection
 
 19
 Plaintiff also claims a violation of his right to equal protection under the Fourteenth Amendment.[3] The district court dismissed that claim, concluding that there were not sufficient allegations of racially discriminatory treatment. Phelps, 632 F.Supp. at 1169.
 
 
 20
 In order to state a claim based on the Equal Protection Clause, plaintiff must sufficiently allege that defendants were motivated by racial animus. See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); Harris v. Harvey, 605 F.2d 330, 338 (7th Cir.1979), cert. denied, 445 U.S. 938, 100 S.Ct. 1331, 63 L.Ed.2d 772 (1980). The First Amended Complaint alleges that one of the newspaper articles described plaintiff as "a black man's lawyer, 'a modern-day John Brown', and 'a savior' to blacks in Kansas" and that those statements reveal a race-based animus. (First Amended Complaint at p 9.) Although we do not believe that the newspaper article by itself is sufficient to establish a discriminatory intent, the First Amended Complaint also contains general allegations of an underlying race-based animus.[4] In evaluating the sufficiency of plaintiff's allegations, we cannot ignore the plain language of Rule 9(b) of the Federal Rules of Civil Procedure, which permits "malice, intent, knowledge, and other condition of mind of a person" to be "averred generally."[5] Accordingly, we conclude that plaintiff has sufficiently alleged racial animus and that it was, therefore, error to grant the motion to dismiss his equal protection claim brought under Section 1983.
 
 C. First Amendment
 
 21
 Plaintiff argues on appeal that defendants defamed him in retaliation for his association with blacks and because he is a Baptist, in violation of his First Amendment rights. The district court rejected that claim, largely relying on Paul v. Davis. The district court stated that plaintiff had not adequately alleged that he had been denied free speech rights or any right of association.
 
 
 22
 We agree with the district court that plaintiff's allegations do not state a cause of action under the First Amendment. In support of his First Amendment claim, plaintiff's First Amended Complaint contains only conclusory allegations that defendants selectively defamed him and invaded his privacy. (First Amended Complaint at paragraphs 9, 13.) Those allegations are insufficient to state a claim under the First Amendment. Moreover, a review of the First Amended complaint makes it clear that plaintiff did not allege a First Amendment violation as a predicate to his Section 1983 claims. Rather, the First Amended Complaint, which is quite specific in this regard, asserts First Amendment violations only in connection with plaintiff's Section 1981 and 1985 claims. See First Amended Complaint at paragraphs 9, 13. Accordingly, we affirm the district court's ruling that the First Amended Complaint fails to state a Section 1983 claim premised on a First Amendment right.[6]
 
 D. State Action
 
 23
 Section 1983 applies only to actions performed under color of state law. That requirement does not mean that all defendants must be officers of the state. If a private defendant is "a willful participant in joint action with the State or its agents," that is sufficient. Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982); Lee v. Town of Estes Park, 820 F.2d 1112, 1114 (10th Cir.1987).
 
 
 24
 The district court never addressed the state action issue because it dismissed plaintiff's claims on other grounds. Plaintiff contends in his First Amended Complaint that the newspaper and some of its employees conspired with Philip Harley, an alleged state actor. Specifically, plaintiff alleges, and defendants dispute, that "Harley is a white lawyer now living in Colorado, but formerly, and at times relevant hereto, was assistant attorney general in Kansas, and acted under color of state law in joining the other defendants in said scheme." (First Amended Complaint at p 5.) Plaintiff also alleges that the scheme to defame him was perpetrated "in concert with other state officials whose duty it is and was to strictly maintain the confidentiality of such false and disproven complaints, and without whose conspiratorial cooperation said material could not have been divulged." (First Amended Complaint at p 7.)
 
 
 25
 What constitutes state action under the Fourteenth Amendment has not been defined with precision.[7] The Supreme Court has counseled us that the state action inquiry, although a legal determination to be made by the court,[8] requires the "sifting [of] facts and weighing [of] circumstances." Burton v. Wilmington Parking Auth., 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). The Court further has instructed us that state action requires "significant" involvement by the state in the allegedly unconstitutional conduct. Id. This requirement, in our view, necessitates a showing here that the state did more than merely make available to the newspaper defendants information about the 1976 Kansas state attorney general's investigation of plaintiff. Plaintiff must show that the state played a significant role in the discrimination alleged by plaintiff. In other words, plaintiff must demonstrate that there was a significant nexus between the actions of the state and the allegedly discriminatory decision to publish disparaging articles about plaintiff because of his representation of black clients, a decision that would not have occurred if plaintiff had not been so aligned with black interests.[9] Further, it has been suggested that a balancing analysis might be necessary to determine whether state action is involved where state encouragement or assistance pertains to private conduct that itself is the subject of constitutional protection. See R. Rotunda, J. Nowak, & J. Young, Treatise on Constitutional Law: Substance and Procedure p 16.3, at 173 (1986).
 
 
 26
 Here, the act of publication and the exercise of editorial discretion concerning what to publish are protected by the First Amendment. If the mere publication of an article based upon information obtained from government officials could constitute state action, private newspapers would be significantly discouraged from interviewing state officials to gather information on important public issues. The Supreme Court has repeatedly emphasized the First Amendment's concern with minimizing that type of chilling effect. See, e.g., Hustler Magazine v. Falwell, 485 U.S. 46, 108 S.Ct. 876, 880, 99 L.Ed.2d 41 (1988); Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 777-78, 106 S.Ct. 1558, 1564, 89 L.Ed.2d 783 (1986); New York Times v. Sullivan, 376 U.S. 254, 272, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).
 
 
 27
 Thus, the precise nature of the state's involvement in the publication of the articles about which plaintiff complains is critical to a determination of whether there was state action involved in the discriminatory conduct upon which plaintiff's equal protection claim under Section 1983 is premised. For that reason, we decline to rule on the state action issue at this stage of the proceedings, and we remand for a further development of the factual record. Among the factors that the district court should consider and weigh in making its state action determination in this case are whether the actions of Harley reflect a discriminatory animus, whether and to what extent he joined with other defendants in the purported scheme, and whether other state officials acted in concert with defendants. If plaintiff's allegations in his First Amended Complaint are false, there may be grounds for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, but plaintiff's equal protection claim under Section 1983 cannot be dismissed on the face of the pleading under Rule 12(b)(6).
 
 III.
 SECTION 1985
 
 28
 Plaintiff alleges that the defendants conspired to interfere with his civil rights in violation of 42 U.S.C. Sec. 1985. The district court dismissed that claim because it found that no federal right had been violated. Because plaintiff clearly has not alleged any of the elements of Sections 1985(1) or 1985(2), we will assume plaintiff is claiming a violation of Section 1985(3), which provides:
 
 
 29
 If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
 
 
 30
 Thus, the requirements for establishing a cause of action under Section 1985(3) are specific:
 
 
 31
 To come within the legislation a complaint must allege
 
 
 32
 that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protections of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."
 
 
 33
 Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).
 
 
 34
 Plaintiff's complaint sufficiently alleges a conspiracy (First Amended Complaint at paragraphs 4, 6, 7, and 8), a discriminatory animus against blacks and those who help blacks (First Amended Complaint at p 9), and acts in furtherance of the conspiracy (First Amended Complaint at paragraphs 6, 7). Plaintiff also alleges a deprivation of his rights under the Equal Protection Clause. (First Amended Complaint at paragraphs 9, 13.)[10] Accordingly, we reverse the district court's dismissal of plaintiff's Section 1985(3) claim of a conspiracy to violate his rights guaranteed by the Equal Protection Clause.[11]
 
 IV.
 RICO
 
 35
 Plaintiff has alleged that defendants violated the civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Secs. 1961-1965.[12] That Act makes it unlawful for "any person employed by or associated with an enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. Sec. 1962(c). Thus, in order to state a RICO claim, plaintiff must sufficiently allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).
 
 
 36
 The district court dismissed the RICO claim, finding that plaintiff had not sufficiently alleged a "pattern" of racketeering activity as required by the statute. The district court stated that plaintiff had alleged only one fraudulent scheme, which the court held was insufficient to establish a pattern. Although the district court's reasoning was incorrect, we agree with its conclusion.
 
 
 37
 The Supreme Court has recently held that a RICO violation does not require more than one scheme. H.J. Inc. v. Northwestern Bell Telephone Co., --- U.S. ----, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Court there reiterated its prior holding that all that is required to constitute a pattern are two elements--"continuity plus relationship." Sedima, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. There is no question that the acts complained of in this case are related because they are all part of an alleged common scheme. See Torwest DBC, Inc. v. Dick, 810 F.2d 925, 928 (10th Cir.1987). The central question is whether they are "continuous." To establish continuity, the plaintiff must demonstrate either "a closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc. v. Northwestern Bell Telephone Co., 109 S.Ct. at 2902. These two forms of continuity are respectively referred to as closed-ended and open-ended continuity. Id. The Supreme Court held that closed-ended continuity requires "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months" are insufficient. Id. Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct. Id.
 
 
 38
 Here, plaintiff does not allege either closed-ended or open-ended continuity. The two articles of which he complains were published on the same day and the research and gathering of information to write the articles was so close in time and function as not to establish a sufficiently discrete series of predicate acts extending over a substantial period of time to constitute a closed continuity. Similarly, plaintiff has not alleged an open-ended continuity. He has alleged only a scheme to publish two isolated articles about him. He has not alleged a scheme continuously to defame him, nor has he alleged any threat of future activity. Thus, there is no open-ended ongoing pattern of racketeering activity alleged here. At most, plaintiff has alleged a scheme to accomplish "one discrete goal," which he alleges was accomplished. That is insufficient to state a claim for relief under RICO. See Torwest, 810 F.2d at 929; Garbade v. Great Divide Mining and Milling Corp., 831 F.2d 212, 214 (10th Cir.1987). Therefore, plaintiff has not sufficiently alleged a "pattern" of racketeering activity.[13]
 
 V.
 WICHITA EAGLE-BEACON'S FIRST AMENDMENT RIGHTS
 
 39
 Although the district court did not address the issue, defendants contend on appeal, and argued below, that the First Amendment rights of newspapers provide an independent reason for dismissing plaintiff's complaint. That argument requires us to engage in a difficult balancing of competing constitutional values.[14] We prefer not to address this issue on the basis of the skimpy and conclusory pleadings before us. We therefore decline to consider that argument while the case is still in the pleading stage, but we do not preclude defendants from raising the issue in the district court on remand after the facts of this case have been more fully developed.
 
 VI.
 LEAVE TO AMEND
 
 40
 Plaintiff contends that the district court erred in denying him leave to amend his First Amended Complaint. We disagree. Although leave to amend should be granted freely "when justice so requires," Fed.R.Civ.P. 15(a), the decision whether to grant leave to amend is within the discretion of the district court. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Here, plaintiff already has been allowed to amend his complaint once, and there is no showing that a further amendment would cure the defects in his complaint discussed above. Thus, we hold that the district court did not abuse its discretion in denying plaintiff leave to amend.
 
 VII.
 ATTORNEYS' FEES/SANCTIONS
 
 41
 On cross-appeal, defendants argue that the district court erred in refusing to award them attorneys' fees or sanctions. We agree with the district court's decision on this issue. Although some of plaintiff's claims, such as his RICO claim, border on being frivolous, plaintiff has raised some complex issues, two of which (the equal protection claims under Sections 1983 and 1985) should not have been dismissed under Rule 12(b)(6).
 
 
 42
 In summary, we affirm the dismissal of plaintiff's claim under Section 1981, his claim of deprivation of a liberty or property interest and his First Amendment argument on appeal under Section 1983, his First Amendment claim under Section 1985, and his RICO claim. We also affirm the denial of sanctions. However, in light of our duty to construe plaintiff's complaint liberally at this stage of the proceedings, we reverse the dismissal of plaintiff's equal protection claims brought under Sections 1983 and 1985, although we do not intimate any views as to plaintiff's likelihood of ultimately succeeding in proving those claims. Because we do not affirm the dismissal of all of plaintiff's federal claims, the district court has jurisdiction, in its discretion, to hear plaintiff's pendent state claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). We therefore reverse the district court's dismissal of the state claims for lack of jurisdiction.
 
 
 43
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Chief Judge Bruce S. Jenkins, of the United States District Court for the District of Utah, sitting by designation
 
 
 [1]
 Section 1981 provides:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, exactions of every kind, and to no other.
 
 
 [2]
 Section 1983 provides in pertinent part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [3]
 The Court in Paul v. Davis addressed only the issue of whether there was a deprivation of a property or liberty interest without due process. That case did not address other constitutional arguments arising from defamatory actions by the government. See, e.g., Rakovich v. Wade, 850 F.2d 1180, 1189 (7th Cir.) (en banc) (First Amendment retaliatory action), cert. denied, --- U.S. ----, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988)
 
 
 [4]
 Paragraph 13 of plaintiff's First Amended Complaint states:
 Defendants' said conduct was at all times wanton, reckless, malicious, willful, illegal, and in bad faith thereby to deliberately discriminate against plaintiff because he is a black man's lawyer and a Baptist preacher-lawyer, in violation of the First Amendment, implicating Sec. 1981; and thereby to take plaintiff's liberty and property interests without due process or equal protection, in violation of the Fourteenth Amendment, all by invidious discrimination and under color of state law, implicating Sec. 1983; ... and pursuant to unlawful race-based animus and conspiracy so to do, implicating Sec. 1985.
 
 
 [5]
 Many courts and commentators have interpreted Rule 9(b) to permit a general averment of intent unaccompanied by supporting factual allegations. See, e.g., McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir.1980); Cramer v. General Tel. & Electronics Corp., 582 F.2d 259, 272-73 (3d Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979); Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir.1973); 5 C. Wright & A. Miller, Federal Practice and Procedure Secs. 1297, 1301 (1969); 2A Moore's Federal Practice p 9.03, 9.03 (2d ed. 1989). In contrast, some cases have held that a plaintiff making a general averment as to a defendant's intent must also allege facts that create a "strong inference" that the defendant possessed the averred intent. Ross v. A.H. Robins Co., 607 F.2d 545, 558 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); see also Devaney v. Chester, 813 F.2d 566, 569 (2d Cir.1987); Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir.1987). Absent Rule 9(b), the approach taken in those cases requiring more specific factual allegations would have considerable appeal. However, because we cannot reconcile that approach with the plain language of Rule 9(b), we do not adopt it
 
 
 [6]
 Plaintiff also argues that there was a violation of a Kansas Supreme Court rule because information which had been sealed was leaked to the newspaper. While that may be true, that allegation does not state a violation of a right protected by the federal civil rights statutes
 
 
 [7]
 If plaintiff satisfies the Fourteenth Amendment's state action requirement, he will also satisfy Section 1983's under-color-of-state-law requirement. See Lugar v. Edmondson Oil Co., 457 U.S. at 935, 102 S.Ct. at 2752 (1982)
 
 
 [8]
 See Gilmore v. City of Montgomery, 417 U.S. 556, 570, 94 S.Ct. 2416, 2424, 41 L.Ed.2d 304 (1974)
 
 
 [9]
 State action, of course, could also be shown in certain limited situations if the discriminatory conduct involved a "public function," see Marsh v. Alabama, 326 U.S. 501, 506, 66 S.Ct. 276, 278, 90 L.Ed. 265 (1946). However, the publication of the newspaper articles of which plaintiff complains were private acts, not acts involving a public function
 
 
 [10]
 In order to state a cause of action under Sec. 1985(3) based on the Equal Protection Clause, plaintiffs must sufficiently allege state action. See United Brotherhood of Carpenters & Joiners of America v. Scott, 463 U.S. 825, 831-33, 103 S.Ct. 3352, 3357-58, 77 L.Ed.2d 1049 (1983). As discussed earlier, we are not prepared at this stage of the proceedings to affirm a dismissal of plaintiff's Sec. 1985(3) claim on the state action issue, but we do not preclude the defendants from raising that issue further after development of a factual record
 
 
 [11]
 Plaintiff also alleges a deprivation of his First Amendment rights in violation of Section 1985(3). However, as noted in Section II(C), supra, plaintiff does not allege facts sufficient to demonstrate any violation of plaintiff's First Amendment rights. Accordingly, we affirm the district court's dismissal of that claim
 
 
 [12]
 One of the issues before the district court was whether plaintiff's RICO claim was barred by a statute of limitations. Plaintiff first alleged the claim in his First Amended Complaint, which was filed after the two year statute of limitations for fraud in Kansas. The district court held that the Amended Complaint related back to the Original Complaint so that plaintiff's claim was not barred. This issue is now moot because the United States Supreme Court has held that the appropriate statute of limitations for civil RICO claims is four years. Agency Holding Corp. v. Malley-Duff & Associates, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Thus, plaintiff's RICO claim is not barred by a statute of limitations
 
 
 [13]
 Appellees also argue that plaintiff has failed to allege an enterprise; that he failed to allege predicate acts such as mail fraud; and that there is a lack of particularity in the alleged fraud, as required by Fed.R.Civ.P. 9(b). See Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir.1989). Because plaintiff has not met the pattern requirement, we need not reach those issues
 
 
 [14]
 As discussed earlier, this balancing may take place in the course of determining whether there is state action. See Section II(D), supra