**Lawrence MALONE, Plaintiff,**

v.

**PIPEFITTERS' ASSOCIATION, LOCAL UNION 597, Defendant.**

No. 87 C 9966.

United States District Court, N.D. Illinois, E.D.

Sept. 19, 1991.

Gerald L. Morel, Masuda, Funai, Eifert & Mitchell, Ltd., Chicago, Ill., for plaintiff.

Steven B. Varick, McBride, Baker & Coles, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, District Judge.

### I. INTRODUCTION

This is an action brought by plaintiff Lawrence Malone ("Malone") against defendant Pipefitters' Association Local Union 597 ("Union"), alleging racial discrimination pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff alleges that the Union discriminated against him in the dissemination of work information and employment referrals because he is African–American, and also retaliated against him when he raised discrimination claims to Union officials by providing him with no employment referrals between January 1986 and October 1987, and by then denying him a work permit. On June 26, 1990, the Union filed a motion for summary judgment arguing that its work referral system was not discriminatory. The Union also moved for partial summary judgment as to that part of plaintiff's claim based on section 1981, arguing that plaintiff's allegations are beyond the scope of the statute. Finally, the Union moved for partial summary judgment as to those portions of plaintiff's complaint that fall outside the statutes of limitations for Title VII and section 1981. The Court referred the Union's motion to Magistrate–Judge Edward A. Bobrick for a recommendation. On February 28, 1991, Magistrate–Judge Bobrick recommended that the defendant's motion for summary judgment be denied in part and granted only as to plaintiff's Title VII claims as they relate to conduct which occurred prior to August 29, 1986. Before the Court are plaintiff's and defendant's objections to the Report and Recommendation of the Magistrate–Judge. For the rea-

sons set forth below, the objections of the plaintiff will be sustained in part and overruled in part. The objections of the Union will be overruled. The Report and Recommendation will be adopted, with one slight modification regarding the statute of limitations. The Court will address the objections of each party in turn.

## II. ANALYSIS

### A. Malone's Objections

Malone's only objection is that the Magistrate–Judge erred in recommending that part of his Title VII claim be dismissed because it was barred by the statute of limitations. A plaintiff must file Title VII discrimination charges before the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged conduct. 42 U.S.C. § 2000e–5(e). Malone filed his charges with the EEOC on June 25, 1987, and therefore his Title VII claims may not address conduct occurring prior to August 29, 1986. However, some of the incidents contained in Malone's complaint occurred more than 300 days prior to his filing of a claim with the EEOC. According to Malone, these earlier acts of discrimination were part of a "continuing violation" as recognized in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). *See Young v. Will County Dept. of Public Aid*, 882 F.2d 290, 292 (7th Cir.1989). To succeed on this argument, Malone must demonstrate that the acts of alleged discrimination are part of an ongoing pattern of discrimination and that at least one of the alleged acts of discrimination occurred within the relevant limitation period. *Id.; Stewart v. CPC International, Inc.*, 679 F.2d 117, 121 (7th Cir.1982) (*per curiam*).

■ Malone relies on several events which occurred prior to August 29, 1986 to advance his argument. The first two include Malone's filing of a charge of discrimination with the Illinois Department of Human Rights in 1983 and a complaint of discrimination filed with the Union in June 1984. By his own admission, Malone then worked fairly consistently through 1984 and 1985, almost solely on referrals from the Union. (Plaintiff's Objection at 2.) Given this break in events, the Court agrees with the Magistrate–Judge that the alleged discrimination in 1983 and 1984 was not a "continuing violation" with the events after August 29, 1986 for purposes of the statute of limitations. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989). This evidence may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue. *Evans*, 431 U.S. at 558, 97 S.Ct. at 1889.

■ Malone has also alleged a continuing violation from January 1986 when he first complained to the Union about an incident of discriminatory treatment by a union contractor. From that point until he filed his claim with the EEOC in 1987, his referrals from the Union dried up completely. This second round of alleged discrimination appears to be part of the same pattern, and the Court finds that it is within the statutory period. The Court holds that Malone's objection is sustained as it refers to events occurring after January 1986 and it is denied regarding earlier events.

### B. The Union's Objections

The Union first argues that by prohibiting discrimination in the making of a contract, section 1981 does not cover the allocation of job information by a Union. The Union contends that at most it interfered with leads about possible contracts between Malone and contractors and not with contracts themselves. The Magistrate–Judge relied on a line of cases decided prior to *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), to conclude that third party interference with contractual rights is actionable under section 1981. *See Al–Khazraji v. St. Francis College*, 784 F.2d 505, 518 (3rd Cir.1986); *Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir.1975); *Ingram v. Madison Square Garden Center, Inc.*, 482 F.Supp. 414, 423 (S.D.N.Y.1979) (union liable under section 1981 for maintaining a discriminatory job referral system); *see also Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 236–37, 90 S.Ct. 400, 404, 24 L.Ed.2d 386

(1969) (42 U.S.C. § 1982, which has a common origin with section 1981, protects against the actions of third parties).

The Union cites two cases for the proposition that the possible loss of future opportunities is insufficient to state a claim under section 1981. *Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262 (10th Cir.1989); *Carter v. South Central Bell,* 912 F.2d 832 (5th Cir.1990). However, neither of these cases concerns a union that sets itself up as the go-between for contractors and its rank and file with regard to job referrals.

In *Phelps,* a caucasian attorney sued a newspaper for running unfavorable articles about him that interfered with his "prospective business opportunities." 886 F.2d at 1267. The Fifth Circuit rejected his claim because it "merely alleges *possible* loss of *future* opportunities." *Id.* (emphasis in original). Clearly the attorney's future job prospects in that case were highly speculative. The situation is far different in this case, viewing the evidence favorably to Malone. The Union is the pipeline through which most all job referrals came to Malone. Without access to those referrals in an evenhanded fashion, he faced a certain loss of all employment with contractors who sought to hire pipefitters through the Union.

■ The Union cannot absolve itself of responsibility for overseeing a job referral system that discriminates on account of race by pointing out that Malone could have sought jobs on his own, presumably by searching construction sites and asking for work. The Union, as part of its contract, assumed the responsibilities for a job referral network and agreed to administer it without regard to race. Having taken on this responsibility, the Union had a duty to administer it fairly.

■ *Carter* is inapposite. There the court held that the failure to transfer an engineer from one work group at a company to another work group was no longer actionable under section 1981. 912 F.2d at 839–40. Obviously, each time that Malone obtained work with a different contractor he would start a new contract relationship with that contractor. The issue here is whether a third party is liable for interfering with that contract. Given the relationship between the contractors, the Union and the rank and file in this job referral set-up, the Court agrees with the Magistrate–Judge that third party liability by the Union for interfering with the formation of a contract between a contractor and a Union pipefitter survives *Patterson.*

■ As to that part of section 1981 that prohibits racial discrimination in the enforcement of a contract, the Union contends that section 1981 prohibits only conduct which actually impedes or obstructs an individual's access to legal process. But Malone has alleged that the Union impeded his access to legal process when it failed to process his complaint of racial discrimination against the contractor in January 1986. The retaliation allegedly put an end to job referrals and led to the denial of a work permit.

■ The Union also contends that Malone seeks to enforce statutory rights, which are not actionable under section 1981, rather than contractual rights, which are actionable. Malone has responded with copies of Union contracts that prohibit discrimination both by the Union in the job referral process and the contractors during hiring. Malone is clearly standing on his contract rights rather than statutory rights regarding the retaliation. The Union makes one additional objection regarding section 1981, but the Court cannot make heads or tails of that argument. (Union's Objections at 10, under the heading "There is no proof of a motive within § 1981 here.") Therefore, the Court will not address it.

■ The Union's next objections are fact based. The Union argues that Malone has presented no evidence of discriminatory allocation of job information. This, as the Magistrate–Judge pointed out, is not the case. At his deposition, Malone testified that at the Union hall a Union business agent would publicly announce open positions to all pipefitters present. (Plaintiff's response to Defendant's objections at 1–2, citing Malone deposition.) The agent

would then receive business cards from interested Union pipefitters underneath a window. *Id.* Malone testified that rather than drawing cards randomly, the business agent routinely looked at the names on the cards before picking the pipefitters who obtained the jobs. *Id.* at 2. He stated that white pipefitters routinely received referrals and that over a period of nearly two years he was given none.

The Union counters that the deposition testimony of one of its business agents, Francis McCartin, dispels the notion that the job referral system was discriminatory or that the Union revamped the system after Malone left the Union because it was unfair. In response to a question on why the Union changed its procedure, McCarten answered, "so that we could have computation and accuracy in who was there at the time and the fairness of drawing from a drum rather than trying to leave it up to men and any individual to decide who was going to go where." (Defendant's Objections at 3, citing *McCartin deposition.*) According to the Union, this statement shows that the new system was implemented to document the fairness of the old job referral setup. To reach this conclusion the Union ignores the second part of McCarten's statement which the Magistrate–Judge properly used to highlight the arbitrariness of the old system that allowed the business agents to decide "who was going to go where." The Court finds that a factual issue continues to exist as to whether the Union discriminated against Malone in its job referrals.

■ The Union next argues that Malone presented no evidence of discrimination in the denial of a work permit. According to Malone, business agent Jimmy Glynn told him in June 1987 that "no nigger that sues Union contractors for injuries and sues the Union for race discrimination will be given a permit to work to pay Union dues. Off the record, it's not because of me. It comes from downtown." (Plaintiff's response to motion for summary judgment at 2–3, citing Malone affidavit.) The Union has failed to rebut the inference from this statement that Malone was denied a Union work permit, that he needed to pay off the Union's reinitiation fees because of his race. The Union has also failed to offer an explanation of why Malone was not given the same opportunity as other Union members to schedule repayment of reinitiation fees while working on a temporary permit.

■ The Union further contends that Malone presented no evidence that it failed to investigate his complaints. Essentially this point comes down to a swearing contest between the two sides. Malone contends that he made complaints which the Union failed to investigate; the Union contends that Malone never made complaints. A factual issue remains as to which of these two versions is correct.

Finally, the Union argues that summary judgement should be entered on Malone's claim under the Labor Management Relations Act. 29 U.S.C. § 185. The Union did not raise this issue in the motion for summary judgment before the Magistrate–Judge. The Court's purpose in referring the case to the Magistrate–Judge was to streamline this Court's review of the case. The Court will not entertain attempts to bypass that system by raising new issues in the objections to the Magistrate–Judge's Report.

## III. CONCLUSION

For the foregoing reasons, plaintiff's objections to the Report and Recommendation of Magistrate–Judge Bobrick are sustained in part and overruled in part. The defendant's objections are overruled. With the exception of the modification as to the starting date of plaintiff's Title VII claim, the Court adopts that Report in full.