**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JAMES M. ERIKSON and PATRICK
KILGALLEN,

          Plaintiffs-Appellants,

v.

FARMERS GROUP, INC., a Nevada
corporation; RICHARD J. BRUCE;
WILLIAM D. PETTIGREW,
individually and as agents and
employees of Farmers Insurance
Group of Companies, and Dobbs &
Middleton,

          Defendants-Appellees.

No. 03-6352

Western District of Oklahoma

(D.C. No. CIV-02-1117-L)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **McWILLIAMS**, and **McCONNELL**, Circuit Judges.

---

This case arises out of a personal injury action in an Oklahoma state court.

Plaintiffs allege that Farmers Group, Inc. ("Farmers") misrepresented the scope of

the state court's medical privilege waiver and thereby improperly obtained

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

confidential medical records. On June 26 and 27, 2000, Farmers introduced into evidence some of the information contained in those medical records. Plaintiffs claim that they learned of Farmers' alleged misrepresentation on August 14, 2000 when they received a copy of a letter sent by Farmers to one of Mr. Erikson's physicians. Plaintiffs filed the current lawsuit in the United States District Court for the Western District of Oklahoma on August 14, 2002, asserting state law claims against Farmers for invasion of privacy and misrepresentation, and a federal claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. The district court dismissed Plaintiffs' claims, finding that Plaintiffs' state law claims were barred by Oklahoma's two-year statute of limitations and that Plaintiffs failed to allege a pattern of racketeering activity. We **AFFIRM**.

## I.

In 1995, Plaintiffs James Erikson and Patrick Kilgallen were rear-ended by a vehicle driven by Dana Davis-Lauderdale, who Plaintiffs allege was insured by Farmers.[1] Mr. Erikson and Mr. Kilgallen filed a lawsuit against Ms. Davis-Lauderdale in the District Court of Cleveland County, Oklahoma. The Cleveland

---

[1]Defendant, whose full name is Farmers Group, Inc., disputes the allegation that it insured Ms. Davis-Lauderdale, claiming that it is not an insurance company. Because Farmers declined to address this issue on appeal, we do not consider it here.

County court ordered a partial medical privilege waiver permitting Farmers to obtain medical records regarding Mr. Erikson's headaches, neck, back, shoulder, arm, and blood pressure problems, and Mr. Kilgallen's head, neck, back, side, shoulder, and arm problems. Plaintiffs allege that Farmers, acting through the attorneys at Dobbs & Middleton who represented Ms. Davis-Lauderdale, sent letters to 46 health-care providers who had treated or examined Plaintiffs before or after the automobile accident. According to Plaintiffs, these letters misrepresented the scope of the partial medical privilege waiver, stating that the court order entitled Farmers to obtain all medical information contained in Mr. Erikson's and Mr. Kilgallen's files. The court's medical privilege waiver was attached to the letters.

On January 20, 2000, Plaintiffs filed a motion *in limine* in the state court proceedings to exclude any reference to their pre-existing medical conditions or disabilities. In the motion, Plaintiffs argued that Farmers provided the Plaintiffs with an extensive and voluminous collection of Plaintiffs' pre-existing medical conditions, constituting approximately 2,000 pages of records. Plaintiffs sought to exclude the medical records because Farmers obtained the records without providing Plaintiffs with a copy of the subpoena as required under Oklahoma law. Although the record is not entirely clear, this motion was apparently denied.

Plaintiffs allege that at trial, on June 26 and 27, 2000, Farmers introduced confidential medical records that were outside the scope of the partial medical privilege waiver. Specifically, they allege that at trial Farmers made known to the court, jurors, and general public confidential medical information relating to injuries suffered in a taxi-cab accident in the 1940s, that one of them was prescribed Prozac, and that one of them had been previously prescribed massage therapy. Plaintiffs claim that these medical records were not relevant to the personal injury claim, and that they were unduly embarrassed, surprised and taken aback when this evidence was introduced at trial. The jury returned a verdict in favor of Ms. Davis-Lauderdale on June 28, 2000.

Later, on August 14, 2000, Plaintiffs received a copy of the letter sent by Farmers to Dr. Thomas Hoffmeyer, one of Mr. Erikson's medical providers. Plaintiffs then subpoenaed Farmers for copies of all letters sent to Mr. Erikson's and Mr. Kilgallen's medical providers, and Farmers produced copies of all letters. On September 26, 2000, Plaintiffs moved in the District Court of Cleveland County for a judgment notwithstanding the verdict, based in part on their assertion that Farmers wrongfully obtained the medical records that were used against Mr. Erikson and Mr. Kilgallen at trial. After the trial court denied the motion, Plaintiffs appealed to the Oklahoma Court of Civil Appeals, which affirmed.

On August 14, 2002, Plaintiffs filed this lawsuit in the United States District Court for the Western District of Oklahoma. Plaintiffs alleged that Farmers violated RICO by fraudulently stating or implying that a court authorized the release of medical records not pertaining to Plaintiffs' injuries. Invoking the court's diversity jurisdiction, Plaintiffs also asserted state law claims of invasion of privacy by intrusion, private life invasion of privacy, false light invasion of privacy, and misrepresentation. Farmers filed a motion to dismiss, claiming that Plaintiffs' state law claims were barred by the statute of limitations, the doctrine of collateral estoppel, and the doctrine of absolute litigation immunity; and that the RICO claim failed to allege a pattern of racketeering activity. The district court found that because Plaintiffs knew of Farmers' alleged wrongful conduct at the personal injury trial, more than two years before this lawsuit was filed, Plaintiffs' claims were barred under Oklahoma's two-year statute of limitations. The district court also held that Plaintiffs' allegations did not establish a pattern of racketeering activity because Plaintiffs did not allege a threat of continuing criminal activity. Plaintiffs now appeal the district court's dismissal of their claims.

## II.

We review the district court's grant of a motion to dismiss *de novo*. *U.S. West, Inc. v. Tristani*, 182 F.3d 1202, 1206 (10th Cir. 1999). In reviewing the

district court's grant of a 12(b)(6) motion to dismiss, we accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the non-moving party. *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). Exhibits attached to a complaint and matters of public record are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (facts subject to judicial notice, such as prior court proceedings, may properly be considered in a motion to dismiss); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). We will affirm a dismissal "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Deck v. Engineered Laminates*, 349 F.3d 1253, 1256 (10th Cir. 2003).

### A. State Law Claims of Invasion of Privacy and Misrepresentation

The district court dismissed Plaintiffs' invasion of privacy and misrepresentation claims under Oklahoma's two-year statute of limitations. The district court found that the statute of limitations began to run no later than June 28, 2000, the date on which the jury returned a verdict in the state court trial. Whether a district court properly applied a statute of limitations and the date on which the statute of limitations accrued under undisputed facts are questions of

law we review *de novo*. *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005). Both parties agree that Oklahoma law applies to Plaintiffs' state law claims.

Under Oklahoma law, claims for invasion of privacy and misrepresentation are subject to a two-year statute of limitations. Okla. Stat. tit. 12, § 95 (two-year statute of limitations applies to actions for injury to the rights of another, not arising under contract); *Colbert v. World Publ'g Co.*, 747 P.2d 286, 288-89 (Okla. 1987) (holding that Title 12, Section 95 applies to claims for false light invasion of privacy). Oklahoma courts apply the so-called "discovery rule" to determine when the two-year statute of limitations accrues. *Smith v. Baptist Found. of Okla.*, 50 P.3d 1132, 1137 (Okla. 2002). The discovery rule provides that "the limitations period does not begin to run until the date the plaintiff knew or should have known of the injury." *The Samuel Roberts Noble Found., Inc. v. Vick*, 840 P.2d 619, 624 (Okla. 1992). Even under the discovery rule, a plaintiff is required to pursue claims with diligence. *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947, 951 (Okla. 1984). The statute of limitations is not tolled simply because a plaintiff "negligently refrain[s] from prosecuting inquiries plainly suggested by the facts." *Id.* Accordingly, a plaintiff is charged with having knowledge of those facts which ought to have been discoverable in the exercise of reasonable diligence. *Id.*

The central question in deciding whether the statute of limitations has expired for Plaintiffs' claims is when the Plaintiffs knew or should have known that they suffered injury. Plaintiffs' invasion of privacy and misrepresentation claims all focus upon the injury Plaintiffs suffered when Farmers obtained and disclosed private medical information to the court, jurors, and members of the general public at trial on June 26 and 27, 2000. However, Plaintiffs contend their claims are not barred by the statute of limitations because they did not become aware of Farmers' alleged misrepresentations until August 14, 2000.

The discovery rule, as interpreted by the Oklahoma Supreme Court and this Court, tolls the limitation period only until a plaintiff learns of an injury and, through prudent investigation, can obtain sufficient facts to state a cause of action. In *Samuel R. Noble Foundation*, for example, the Oklahoma Supreme Court held that the plaintiff's awareness that doors were sticking and tiles were popping off a newly constructed building was sufficient information to start the limitations period even though the exact source of the problem was unknown until the completion of a later, independent report. *Samuel R. Noble Found.*, 840 P.2d at 626; *see also Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1217 (10th Cir. 2000) (stating that it was irrelevant whether the plaintiff understood that the defendant's actions constituted a misappropriation of trade secrets as long as the plaintiff knew of the facts which could give rise to such a claim).

The situation presented here is analogous to that in *Samuel R. Noble Foundation*. Just as in that case the plaintiff was aware of their injuries when the doors were sticking and tiles were falling off, Plaintiffs here were aware that their privacy rights were invaded on June 26 and 27, 2000 when Farmers introduced confidential medical information allegedly outside the scope of the state court's partial medical privilege waiver. Plaintiffs' complaint alleges that the Plaintiffs were "unduly embarrassed, surprised and taken aback" *at trial* by the introduction of this confidential medical information. Once the injury occurred at trial, the only information Plaintiffs lacked was how Farmers obtained the medical records. The mere fact that Plaintiffs did not know *how* Farmers obtained the confidential medical information is insufficient to toll the limitations period, just as the *Samuel R. Noble Foundation* plaintiff's ignorance about the exact nature or cause of the building defects was insufficient to toll the limitation period in that case. *See Samuel R. Noble Found.*, 840 P.2d at 625-26 ("It was not necessary that the plaintiff have knowledge of the exact nature or source of the defects, but only the knowledge that a problem existed."). Plaintiffs' awareness at trial that they had suffered an injury was sufficient to permit them to investigate Farmers' source of information, an investigation that, once pursued, led to information useful to their state law claims. Under Oklahoma's interpretation of the discovery rule,

Plaintiffs possessed sufficient information to permit them to pursue their claims such that the limitations period started to run no later than June 28, 2000.

Applying Oklahoma's two-year statute of limitations for invasion of privacy and misrepresentation, the statute of limitations expired no later than June 28, 2002. Plaintiffs did not file this lawsuit until August 14, 2002. Therefore, the district court properly held that Plaintiffs' misrepresentation and invasion of privacy claims are barred by the statute of limitations. Because Plaintiffs' state law claims are barred by the statute of limitations, we do not consider Farmers' other defenses.

## B. RICO Claim

Aside from their state law claims, Plaintiffs also allege that Farmers operated an enterprise that conducted its affairs by using wire and mail fraud to obtain Plaintiffs' medical records in violation of 18 U.S.C. § 1962(c). To successfully state a RICO claim, a plaintiff must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985) (footnote omitted); *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002). The district court dismissed Plaintiffs' RICO claim, finding that Plaintiffs failed to allege the third element: a pattern of racketeering activity.

Section 1962(c) prohibits any person employed by or associated with any enterprise engaged in activities affecting interstate commerce to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). A "pattern of racketeering activity" must include "at least two acts of racketeering activity" in a ten-year period. *Id.* § 1961(5). Furthermore, to show a pattern of racketeering activity, a RICO plaintiff must also satisfy two additional elements: "a relationship between the predicates" and "the threat of continuing activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). A plaintiff may demonstrate continuity by establishing either closed-ended or open-ended continuity. *Id.* at 241.

> [C]losed-ended continuity requires "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months"are insufficient. *H.J. Inc.*, 492 U.S. at 242. Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct.

*Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 (10th Cir. 1989). A single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities, rarely will suffice to establish a threat of continuing activity. *See Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992); *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990); *Phelps*, 886 F.2d at 1273-74.

Plaintiffs have alleged that Farmers committed 46 acts of mail or wire fraud by sending letters to Plaintiffs' healthcare providers that misrepresented the scope of the partial medical privilege waiver. Even if each letter were to constitute a separate act of racketeering activity, Plaintiffs have failed to establish a threat of continuing criminal activity. Plaintiffs' allegation amounts to no more than a claim that Farmers engaged in a single scheme to obtain medical information about them before the Oklahoma trial from a large number of sources. Plaintiffs cannot demonstrate closed-ended continuity because the predicate acts of mailing the letters occurred exclusively during discovery—a period not exceeding a few months. *See Boone*, 972 F.2d at 1555-1556 (schemes and episodes occurring over 23 months did not satisfy the RICO continuity requirement). Likewise, there is no threat of future criminal conduct that will establish open-ended continuity. The trial having concluded, there is no possibility that Farmers will continue this scheme with regard to these Plaintiffs. Nor have Plaintiffs alleged that Farmers consistently engages in this pattern of misrepresentation and mail fraud in its regular course of business, such that future claimants in Plaintiffs' situation will suffer the same injury. Plaintiffs have not alleged the type of long-term criminal

activity against which the RICO statute is aimed. *See H.J. Inc.*, 492 U.S. at 242.

Accordingly, the district court's dismissal of the RICO claim was not in error.[2]

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court

granting Farmers' motion to dismiss.

Entered for the Court


Michael W. McConnell
Circuit Judge

---

[2]Plaintiffs also contend that the district court abused its discretion by not allowing them to amend the RICO allegations in their Second Amended Complaint and by dismissing the case before Plaintiffs conducted additional discovery. However, Plaintiffs failed to request leave to amend their complaint or conduct additional discovery. Accordingly, the district court did not err in failing to grant relief not sought. *See, e.g., Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) (holding there was no error in the district court's failure to rule on a request to amend a complaint contained in a response to a motion to dismiss, where the plaintiffs never filed a motion for leave to amend the complaint after the district court dismissed the complaint).